# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA

| United States of America, | ) | |
|---|---|---|
| Plaintiff, | ) | **ORDER DENYING DEFENDANT'S MOTION TO DISMISS** |
| vs. | ) | |
| | ) | Case No. 1:17-cr-106 |
| Reynard Verle Red Tomahawk, | ) | |
| Defendant. | ) | |

Before the Court is the Defendant's Motion to Dismiss filed on November 8, 2017. See Docket No. 21. The Government filed a response in opposition to the motion on November 13, 2017. See Docket No. 27. The Defendant filed a reply brief on December 4, 2017. See Docket No. 31. For the reasons outlined below, the motion is denied at this stage.

## I.   BACKGROUND

On November 19, 1998, Reynard Red Tomahawk was convicted, in the District of Montana, of one count of abusive sexual contact in violation of 18 United States Code § 2244(a)(1) and sentenced to thirty (30) months imprisonment and three (3) years supervised release. See Docket No. 22-3. It is undisputed that by virtue of this conviction, Red Tomahawk became a tier I sex offender subject to a minimum registration period of 15 years under the Sex Offender Registration and Notification Act ("SORNA"), 42 U.S.C. §§ 16911-16929. The judgment required Red Tomahawk to comply with the State of Montana Sex Offender Registration requirement pursuant to MCA 46-18-255. See Docket No. 22-3, p. 4. Red Tomahawk is an enrolled member of the Standing Rock Sioux Tribe whose reservation straddles the South Dakota/North Dakota border.

1

The record is unclear as to when Red Tomahawk was released from prison. However, it could have been no later than 30 months after the date the sentence was imposed, or May 19, 2001. In addition, the docket sheet from the District of Montana indicates jurisdiction over Red Tomahawk's supervised release was transferred to the Western District of Arkansas on August 22, 2000. See Docket No. 22-4, p. 5. Other records obtained from the U.S. Marshals Service indicate, although not clearly, his supervision began on May 5, 2000, and he was revoked on April 2, 2001, and sentenced to 12 months imprisonment. See Docket No. 28. p. 2. Numerous other violations, including failure to register as a sex offender, kept Red Tomahawk in and out of custody for a total of at least another 30 months until he was arrested on the current charge on May 11, 2017. See Docket Nos. 6 and 28.

On May 10, 2017, Red Tomahawk was charged in the District of North Dakota with failure to register as a sex offender violation of 18 U.S.C. § 2250. See Docket No. 1. This offense is alleged to have occurred on or about April 8, 2017, through April 20, 2017. On November 8, 2017, Red Tomahawk filed a motion to dismiss the indictment contending his obligation to register under SORNA expired prior the offense dates listed in the indictment. The Government contends Red Tomahawk is obligated to register under SORNA since the registration period is subject to tolling and the period of registration required by the State of North Dakota has not expired.

II.     **STANDARD OF REVIEW**

An indictment or information must contain "a plain, concise and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). If the government fails to plead conduct that is consistent with a violation of a criminal statute, the indictment or

2

information is subject to dismissal for failure to state an offense. See United States v. Clark, 646 F.2d 1259, 1262 (8th Cir. 1981); see also Fed. R. Crim. P. 12(b)(3)(B)(v). Claims that a statute named in an indictment does not proscribe the alleged conduct are also treated as claims that the indictment "fails to state an offense." See United States v. Adesida, 129 F.3d 846, 850 (6th Cir. 1997) (recognizing that "if an indictment does not charge a cognizable federal offense, then a federal court lacks jurisdiction to try a defendant for violation of the offense").

In the Eighth Circuit, an indictment or information is sufficient only if "it contains all of the essential elements of the offense charged, fairly informs the defendant of the charges against which he must defend, and alleges sufficient information to allow a defendant to plead a conviction or acquittal as a bar to a subsequent prosecution." United States v. Sewell, 513 F.3d 820, 821 (8th Cir. 2008). If an indictment fails to allege acts that constitute a violation of law, the indictment is subject to dismissal for failure to state an offense pursuant to Fed. R. Crim. P. 12(b)(3)(B)(v). See United States v. Polychron, 841 F.2d 833, 834 (8th Cir.1988). "An indictment is normally sufficient if its language tracks the statutory language." Sewell, 513 F.3d at 822. However, if the Government has applied an erroneous interpretation to the statutory language to attempt to reach actions not prohibited by the statute, the indictment or information is subject to dismissal. See United States v. Tey, 535 F.3d 511, 515 (6th Cir. 2008); United States v. Foley, 73 F.3d 484, 488 (2d Cir. 1996); United States v. Meacham, 626 F.2d 503, 509 (5th Cir. 1980).

### III. LEGAL DISCUSSION

#### A. SORNA

The Adam Walsh Child Protection and Safety Act of 2006 (Adam Walsh Act) was enacted by Congress and signed into law by President Bush on July 27, 2006. Pub. L. 109-248, § 1-155, 120 Stat. 587, 590-611 (2006) (originally codified at 42 U.S.C. §§ 16901-16929, now codified at 34 U.S.C. §§ 20901-20932). The Adam Walsh Act contains the Sex Offender Registration and Notification Act (SORNA). SORNA creates an independent federal obligation on individuals convicted of a "sex offense" to register with a sex offender registry. See 18 U.S.C. § 2250. SORNA is intended to protect the public from sex offenders and establish a comprehensive national database for the registration of such offenders. Thus, SORNA creates a new federal offense for failure to register. Section 2250 imposes criminal penalties of up to ten years imprisonment and a $250,000 fine on individuals required to register under SORNA, who travel in interstate commerce or enter Indian country, and who knowingly fail to register or update their registration. 18 U.S.C. § 2250. In setting minimum national standards, SORNA has established a national baseline which jurisdictions must comply with or risk losing federal justice assistance funding. Final Guidelines, 73 Fed. Reg. 38,030, 38046 (July 2, 2008).

SORNA provides that a sex offender must initially register in the relevant jurisdiction before completing a period of imprisonment, or no later than three business days after being sentenced if not sentenced to imprisonment. 34 U.S.C. § 20913(b). Thereafter, a sex offender is required to keep his/her registration current by appearing in person in at least one jurisdiction in which the sex offender is required to register, and informing the registering agency of any changes in information, such as changes of name, residence, or employment status. 34 U.S.C. § 20913(c). SORNA requires

4

tier I sex offenders to register for 15 year, tier II sex offenders to register for 25 years, and tier III sex offenders to register for life. 34 U.S.C. § 20915. Jurisdictions covered include all states, federal territories, and federally recognized Indian tribes. 42 U.S.C. § 20911(10)

Section 20913(d) of SORNA delegates to the Attorney General the authority to specify the applicability of SORNA to sex offenders convicted before July 27, 2006. On February 28, 2007, under the authority of Section 20913(d), the Attorney General issued an interim rule providing that "[t]he requirements of the Sex Offender Registration and Notification Act apply to all sex offenders, including sex offenders convicted of the offense for which registration is required prior to the enactment of the Act." 72 Fed. Reg. 8894 (Feb. 28, 2007); 28 C.F.R. § 72.3 (2007). The Attorney General issued National Guidelines for Sex Offender Registration and Notification ("Final Guidelines") to interpret and implement SORNA on July 2, 2008. Final Guidelines, 73 Fed. Reg. 38,030 (July 2, 2008). These Final Guidelines became effective on August 1, 2008. See United States v. Gundy, 804 F.3d 140, 143 (2nd Cir. 2015) (citing 5 U.S.C. § 553(d)). Jurisdictions are free to set their own registration periods, however, in order to stay in compliance with SORNA those registration periods must be equal to or longer than those set out in SORNA. Final Guidelines, 73 Fed. Reg. at 38,046-47.

### B. **TOLLING**

Red Tomahawk contends his 15-year obligation to register under SORNA expired prior the offense dates (April 8, 2017 through April 20, 2017) listed in the indictment. The Government contends SORNA's registration periods are subject to tolling when a sex offender is in custody on new charges after serving the sentence which gave rise to the registration obligation. The

5

Government also contends the period of registration required by the State of North Dakota has not expired.

It is undisputed that, absent tolling, more than fifteen years elapsed between the time Red Tomahawk was released from federal prison and the offense dates listed in the indictment. The registration period begins to run when the sex offender is released from prison on the conviction giving rise to the registration requirement. United States v. Del Valle-Cruz, 785 F.3d 48, 55 (1st Cir. 2015); Gundy, 804 F.3d at 147-48. Once the registration period is complete the sex offender is no longer subject to SORNA's registration requirement. Gundy, 804 F.3d at 147.

The indictment in this case reads as follows:

The Grand Jury Charges:

> From on or about April 8, 2017, to on or about April 20, 2017, in the District of North Dakota,
>
> REYNARD VERLE RED TOMAHAWK,
>
> as a person required to register under the Sex Offender Registration and Notification Act, and as a sex offender as defined for the purposes of the Sex Offender Registration and Notification Act by reason of a conviction under federal law for sexual assault Case Number CR 97-107-BLG-JDS, with judgment entered by the Federal District Court of Montana on November 19, 1998, traveled into and resided on the Standing Rock Indian Reservation in Sioux County, North Dakota, and knowingly failed to register as required by the Sex Offender Registration and Notification Act.
>
> In violation of Title 18, United States Code, Section 2250.

See Docket No. 1. The relevant portion of Section 2250 provides as follows:

(a) In general.--Whoever--

(1) is required to register under the Sex Offender Registration and Notification Act;

(2)(A) is a sex offender as defined for the purposes of the Sex Offender Registration and Notification Act by reason of a conviction under Federal law (including the Uniform Code of Military Justice), the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States; or

(B) travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country; and

(3) knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act;

shall be fined under this title or imprisoned not more than 10 years, or both.

18 U.S.C. § 2250.

The Government's tolling argument is based on its reading of 34 U.S.C. § 20915(a) which provides as follows:

(a) Full registration period

A sex offender shall keep the registration current for the full registration period (excluding any time the sex offender is in custody or civilly committed) unless the offender is allowed a reduction under subsection (b).
The full registration period is--

(1) 15 years, if the offender is a tier I sex offender;

(2) 25 years, if the offender is a tier II sex offender; and

(3) the life of the offender, if the offender is a tier III sex offender.

34 U.S.C. § 20915(a) (emphasis added). The Government contends the emphasized language acts as a tolling provision such that any period of incarceration which occurs after the offender is released from prison on a triggering sex offense does not count toward the full registration period. The Government does not cite any case law to support its contention but instead relies upon the Attorney General's Final Guidelines. Red Tomahawk cites one case which touches on the tolling issue but is not directly on point. See United States v. Moore, 449 Fed. App'x 677, 680 (9th Cir. 2011)

(unpublished opinion). The Court's own research has not revealed any case law which supports the Government's tolling argument.

In *Moore* the Ninth Circuit Court of Appeals held the district court abused its discretion by requiring the defendant to register as a sex offender as part of the conditions of supervision for federal fraud and identity theft convictions. Id. at 678, 680. The defendant's original Oregon state court sex offense occurred in 1994 and the fifteen year (tier I sex offender) registration requirement under SORNA had expired by the time of his federal fraud and identity theft convictions. Id. While making no mention of a federal tolling provision under SORNA itself, the Ninth Circuit noted jurisdictions are not required to toll the running of a registration period during subsequent periods of incarceration but may do so if they so choose. Id. (citing the Attorney General's Final Guidelines). At the time, Oregon had not implemented SORNA, much less adopted a tolling provision. The Ninth Circuit concluded that "because no tolling was in effect, the registration period for [ the defendant's] 1994 conviction had run by the time of his sentencing, and the district court therefore abused its discretion in requiring [the defendant] to register under SORNA as a special condition of supervised release." Id.

The Attorney General's Final Guidelines make no mention of a tolling provision in SORNA itself, and offer little support for the Government's contention that the phrase "excluding any time the sex offender is in custody or civilly committed" means anything other than sex offenders need not register while incarcerated because they are subject to much more stringent restraints on their liberty and pose little risk to the public.

The following provisions of the Final Guidelines provide guidance:

**Minimum National Standards**

> SORNA establishes a national baseline for sex offender registration and notification programs. In other words, the Act generally constitutes a set of minimum national standards and sets a floor, not a ceiling, for jurisdictions' programs. Hence, for example, a jurisdiction may have a system that requires registration by broader classes of convicted offenders than those identified in SORNA, or that requires, in addition, registration by certain classes of non-convicts (such as persons acquitted on the ground of insanity of sexually violent crimes or child molestation offenses, or persons released following civil commitment as sexually dangerous persons). A jurisdiction may require verification of the registered address or other registration information by sex offenders with greater frequency than SORNA requires, or by other means in addition to those required by SORNA (e.g., through the use of mailed address verification forms, in addition to in-person appearances). A jurisdiction may require sex offenders to register for longer periods than those required by the SORNA standards.

Final Guidelines, 73 Fed, Reg. 38030-01, 38046 (emphasis added)

**Duration of Registration**

> Section 115(a) of SORNA specifies the minimum required duration of sex offender registration. It generally requires that sex offenders keep the registration current for 15 years in case of a tier I sex offender, for 25 years in case of a tier II sex offender, and for the life of the sex offender in case of a tier III sex offender, "excluding any time the sex offender is in custody or civilly committed." (The tier classifications and their import are explained in Part V of these Guidelines.) The required registration period begins to run upon release from custody for a sex offender sentenced to incarceration for the registration offense, and begins to run at the time of sentencing for a sex offender who receives a nonincarcerative sentence for the offense.
>
> The proviso relating to custody or civil commitment reflects the fact that the SORNA procedures for keeping up the registration—including appearances to report changes of residence or other key information under section 113(c), and periodic appearances for verification under section 116--generally presuppose the case of a sex offender who is free in the community. Where a sex offender is confined, the public is protected against the risk of his reoffending in a more direct way, and more certain means are available for tracking his whereabouts. Hence, SORNA does not require that jurisdictions apply the registration procedures applicable to sex offenders in the community during periods in which a sex offender is in custody or civilly committed.

> However, jurisdictions are not required to "**toll**" the running of the registration period during such subsequent periods of confinement. For example, consider a sex offender released from imprisonment in 2010 who is subject to 25 years of registration under the SORNA standards as a tier II offender, where the sex offender is subsequently convicted during the registration period for committing a robbery and imprisoned for three years for that offense. If the jurisdiction would otherwise require the sex offender to register until 2035 (the 25 year SORNA minimum), it may wish to extend that to 2038 so that the three years the sex offender spent in prison for the robbery is effectively not credited towards the running of the registration period. But that is a matter in the jurisdiction's discretion. Terminating the registration in 2035 would also be consistent with SORNA's requirements.

Final Guidelines, 73 Fed, Reg. 38030-01, 38068 (emphasis added). Thus, the Final Guidelines make it clear SORNA sets the floor and jurisdictions are free to establish longer registration requirements and enact tolling provisions. The SORNA statute provides very specific requirements regarding sex offender registration but makes no mention of tolling. If Congress had wanted to include a broad tolling provision in SORNA, it certainly could have done so. The Attorney General advised the states and other jurisdictions in the Final Guidelines issued in 2008, that enacting a tolling provision was a matter in the particular jurisdiction's discretion. Congress has taken no action to include a tolling provision since the Attorney General issued the Final Guidelines in 2008. SORNA's purpose is not to punish sex offenders but to protect the public. Incarceration is far more effective in protecting the public than a registration requirement, which is presumably why Congress included the language at issue in this case when it drafted the statute. Based on the plain language of the statute and the Attorney General's Final Guidelines, the Court concludes as a matter of law that SORNA itself does not contain a tolling provision. Thus, Red Tomahawk is no longer subject to a federal registration requirement under SORNA itself. However, this conclusion does not end the inquiry.

Red Tomahawk remains subject to the registration requirements of the jurisdiction where he lives, works, or goes to school in. See 34 U.S.C. § 20913(a). Failure to register under those regulations is a violation of 18 U.S.C. § 2250, and likely the particular jurisdiction's own laws as well. In this case, the relevant jurisdiction is the Standing Rock Indian Reservation. See Docket No. 1. As an enrolled member of the Standing Rock Sioux Tribe ("Tribe"), Red Tomahawk is not subject to North Dakota's registration requirements unless he leaves the reservation and enters North Dakota.[1] See N. Cent. Elec. Coop., Inc. v. N.D. Pub. Serv. Comm'n, 837 N.W.2d 138, 142 (N.D. 2013); see also South Dakota v. U.S. Dep't of Interior, 665 F.3d 986, 990 (8th Cir. 2012).

The record does not reveal how long the Standing Rock Sioux Tribe requires Red Tomahawk to register. In addition, the Court is not able to review the Tribe's sex offender registration regulations as they are not, to the Court's knowledge, available for review on any electronic database. Thus, it cannot be determined if the Tribe has enacted a tolling provision or how long Red Tomahawk is required to register. In the absence of any evidence that Red Tomahawk is not required to register by the Tribe, the Court cannot say the Government has failed to plead conduct that is consistent with a violation of a criminal statute and thus the indictment is subject to dismissal for failure to state an offense. See Clark, 646 F.2d at 1262. Should Red Tomahawk come into possession of information indicating that he was not required to register with the Tribe on the dates contained in the indictment he may refile his motion, and the case would likely be dismissed.

---

[1] Upon information and belief, Red Tomahawk is classified as a moderate risk sex offender by the State of North Dakota and therefore is subject to a 25-year registration period. See N.D.C.C. § 12.1-32-15(8)(b). It does not appear that North Dakota has adopted any sort of tolling provision. See N.D.C.C. § 12.1-32-15

**IV.    CONCLUSION**

For the reasons set forth above, the Defendant's Motion to Dismiss (Docket No. 21) is **DENIED** at this stage.

**IT IS SO ORDERED.**

Dated this 7th day of February, 2018.

> */s/ Daniel L. Hovland*
> Daniel L. Hovland, Chief Judge
> United States District Court